244 N.J. Super. 530 (1990)
582 A.2d 1284
CHERYL A. DIFALCO, PLAINTIFF-RESPONDENT,
v.
SUBARU OF AMERICA, INC., FUJI HEAVY INDUSTRIES, LTD., AND TAKATA CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1990.
Decided December 4, 1990.
*531 Before Judges ANTELL, O'BRIEN and SCALERA.
James N. Tracy argued the cause for appellant Takata Corporation (Morley, Cramer, Tansey, Haggerty & Fanning, attorneys; Thomas F. Tansey, of counsel; James N. Tracy, on the brief).
Jeffrey A. Bartolino, Deputy Attorney General, argued the cause for Intervenor, Attorney General (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; Jeffrey A. Bartolino, Deputy Attorney General, on the brief).
McCarter & English submitted a brief on behalf of amici curiae Pittsburgh Corning Corporation and Carey Canada, Inc.
Goldfein & Joseph submitted a brief on behalf of amicus curiae Atlas-Turner, Inc.
The opinion of the court was delivered by ANTELL, P.J.A.D.
This appeal challenges an interlocutory order denying the motion of defendant Takata Corporation (hereinafter "Takata") for summary judgment under the statute of limitations, N.J.S.A. 2A:14-2, and sustaining the constitutionality of New Jersey's tolling statute, N.J.S.A. 2A:14-22. Plaintiff does not appear in defense of this appeal, and the statute's constitutionality is defended by the Attorney General.
Plaintiff was injured in an automobile accident on May 2, 1987. She attributes her injury, at least in part, to the fact that her automobile's seatbelt broke. The car was a Subaru, designed by Fuji Heavy Industries, Ltd. (hereinafter "Fuji"), and on April 7, 1988, she filed this personal injury/products liability suit against defendants Subaru and Fuji. By amended complaint dated October 5, 1989, she joined defendant Takata *532 Corporation, the Japanese manufacturer of the seatbelt. On May 25, 1990, Takata moved for summary judgment on the ground that the amended complaint had been filed outside the two-year period for bringing personal injury actions limited by N.J.S.A. 2A:14-2. Because Takata is a non-resident, foreign corporation, it also challenged the constitutionality of the tolling provision of the statute of limitations applicable to non-residents. On the ground that the statute of limitations had been tolled, the Law Division denied the motion for summary judgment and concluded that the tolling provision was constitutional. Defendant Takata now appeals.
Until 1984, N.J.S.A. 2A:14-22 provided:
If any person against whom there is any of the causes of action specified in sections 2A:14-1 to 2A:14-5 and 2A:14-8, or if any surety against whom there is a cause of action specified in any of the sections of article 2 of this chapter, is not a resident of this State when such cause of action accrues, or removes from this State after the accrual thereof and before the expiration of the times limited in said sections, or if any corporation or corporate surety not organized under the laws of this State, against whom there is such a cause of action, is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues or at any time before the expiration of the times so limited, the time or times during which such person or surety is not residing within this State or such corporation or corporate surety is not represented within this State shall not be computed as part of the periods of time within which such an action is required to be commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation.
In Coons v. American Honda Motor Co., 94 N.J. 307, 463 A.2d 921 (1983) ("Coons I"), the Supreme Court invalidated the foregoing statute on the ground that, as a "forced-licensure" provision it unduly burdened interstate commerce and therefore violated the commerce clause of the Constitution of the United States, art. I, § 8, cl. 3. It based its forced-licensure conclusion upon the fact that because the statute did not specify the means by which a non-resident could secure representation for service of process it could do so only by registering to do business in this state.
*533 To correct the constitutional deficiency found by Coons I, the Legislature amended the tolling statute effective August 23, 1984, by the following language, to allow non-resident corporations to designate a representative to accept service of process without registering to do business:
A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process.
In Bendix Corp. v. Midwesco Enterprises, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), the Supreme Court of the United States considered the effect of the commerce clause upon an Ohio statute of limitations containing a tolling provision similar to that herein, as amended in 1984. The Court described the enactment in the following language:
Ohio recognizes a 4-year statute of limitations in actions for breach of contract or fraud. The statute is tolled, however, for any period that a person or corporation is not "present" in the State. To be present in Ohio, a foreign corporation must appoint an agent for service of process, which operates as consent to the general jurisdiction of the Ohio courts. Applying well-settled constitutional principles, we find the Ohio statute that suspends limitations protection for out-of-state entities is a violation of the Commerce Clause.
Id. at 889, 108 S.Ct. at 2219, 100 L.Ed.2d at 901.
Noting that in order to obtain the protection of the Ohio statute of limitations a non-resident corporation would have to subject itself to the general jurisdiction of Ohio courts, regardless of whether the subject matter of the suit was one in which Ohio had any particular interest, the Supreme Court invalidated the Ohio statute. It reached this result in the following language:
The Ohio statutory scheme thus forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity. Requiring a foreign corporation to appoint an agent for service in all cases and to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for supporting personal jurisdiction, is a significant burden.
Id. at 893, 108 S.Ct. at 2221, 100 L.Ed.2d at 903.
The Bendix holding was directly applied to the New Jersey tolling statute in Juzwin v. Asbestos Corp., Ltd., 900 F.2d 686 *534 (3d Cir.1990). Under a commerce clause analysis the court there concluded that the statute failed the test of "heightened scrutiny," the standard applicable to "`state measures that discriminate on their face against out-of-state interests or in favor of in-state interests,'" id. at 689 (quoting Norfolk Southern Corp. v. Oberly, 822 F.2d 388, 400 (3d Cir.1987)), as well as the balancing test, which seeks to determine whether "the incidental burden on interstate commerce is clearly excessive in relation to the putative local benefits," ibid. While the statute was found to serve a legitimate local purpose in assisting New Jersey citizens to pursue their claims against foreign corporations, the court held that it fails to do so "by available nondiscriminatory means." Ibid. (quoting Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110, 121 (1986)). It explained as follows:
However, "[t]he purpose of the statute is not confined to providing relief when service is impossible. Even where absent residents could be served outside the State, the statute still provides for tolling." Velmohos v. Maren Eng'g Corp., 83 N.J. 282, 416 A.2d 372, 380 (1980), vacated, 455 U.S. 985, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982). We think New Jersey's legitimate interest could adequately be protected by a statute that permits a court to order the statute of limitations to be tolled when it is satisfied that, in spite of diligent efforts, long-arm service cannot be effectuated either because the corporation is beyond the reach of the long-arm rule or because it cannot be found for mail service.
* * * * * * * *
While a narrowly tailored statute would still differentiate between in-state and out-of-state defendants, the differentiation would be based on the inability to locate or reach, not on the attribute of being foreign.
Id. at 690.
In weighing the convenience to New Jersey citizens afforded by the statute against its impact on interstate commerce, the court noted its "real burden" upon
foreign corporations unrepresented but possibly amenable to long-arm service [that] must make the difficult choice whether to file designations (with uncertain consequences) or forego a potential limitations defense, a burden that neither New Jersey corporations nor foreign corporations registered to do business in New Jersey bear.

*535 The magnitude of such a burden on many nonresident corporations is grossly disproportionate to the state's interest in assisting resident plaintiffs in the pursuit of claims against foreign corporations.
Thus, even with a limiting construction, N.J. Stat. Ann. § 2A:14-22 violates the commerce clause under either test since a nondiscriminatory procedure, less burdensome to interstate commerce, could be adopted by New Jersey.
Id. at 691-92.
It is noted that the Juzwin decision was based upon an assumed construction of the statute that would limit the designation of a representative for service of process to causes of action having a nexus with New Jersey.
We are informed by an affidavit submitted by the Attorney General that the Secretary of State permits the filing of designations for service of process pursuant to the tolling statute by unregistered, foreign corporations only with respect to causes of action based on minimal contacts for due process purposes in this State. The affidavit states that "[s]uch designations are recorded by this office and insulate the foreign corporation filing such designations from causes of action which have no nexus with New Jersey." Such an affidavit was evidently also considered by the Juzwin court. Id. at 689. We share that court's reluctance to agree that the consequences of the statute as drawn may be altered by the practice followed in the office of the Secretary of State. Moreover, as the court stated,
Opposite the putative local benefit of the tolling statute we must place the burden on interstate commerce. Since the New Jersey statute does not on its face indicate whether designation of an agent for service of process subjects a corporation to general or limited jurisdiction, it is impossible for a foreign corporation to discern from the statute's wording what the consequences of designating an agent will be. Thus, prudence dictates that foreign corporations wishing to avail themselves of New Jersey's statute of limitations must inquire as to the consequences of designation under the statute. Moreover, given the wording of the tolling statute, foreign corporations may be understandably reluctant to rely on an informal practice of an administrative or executive body to protect themselves from exposure to the general jurisdiction of New Jersey.
Id. at 691.
The Attorney General asks that we interpret the tolling provision so as to satisfy the requirements of the commerce clause and thereby find the statute constitutional. To do so *536 under the standards enunciated in Bendix and Juzwin we would have to read it to limit the purpose of the designated representation to cases where New Jersey courts may exercise extraterritorial jurisdiction and to authorize the tolling of limitations only where the plaintiff can show diligent, though unsuccessful, efforts to effectuate long-arm service. Substantial authority exists for such "judicial surgery." See Matter of Kimber Petroleum Corp., 110 N.J. 69, 83, 539 A.2d 1181 (1988); First Family Mortg. Corp. v. Durham, 108 N.J. 277, 291-92, 528 A.2d 1288 (1987); N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm., 82 N.J. 57, 79, 411 A.2d 168 (1980). We surmise from the vigorous dissents in Coons I that such an undertaking must have been considered by the Supreme Court when that case was decided, but was set aside because of complex policy considerations, not readily apparent, which the Court determined should be better left to the Legislature. For this reason we decline to accord this statute the requested reading.
For the reasons set forth in Bendix Corp. v. Midwesco Enterprises, supra, and Juzwin v. Asbestos Corp., Ltd., supra, we conclude that N.J.S.A. 2A:14-22, as amended in 1984, is violative of the commerce clause and therefore invalid. We further conclude that this determination shall be prospective from the date of the Bendix decision. Although Juzwin accorded retroactive application to its decision, we defer to the retroactivity analysis of our Supreme Court in Coons v. American Honda Motor Co., Inc., 96 N.J. 419, 435, 476 A.2d 763 (1984) (Coons II). See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990).
The determination of the Law Division that the tolling provision of the statute of limitations, N.J.S.A. 2A:14-22, is constitutional, is reversed. Because our determination of unconstitutionality is prospective only as of the date of Bendix, the statute of limitations did not commence running against Takata until June 17, 1988, and the amended complaint against Takata *537 dated October 5, 1989, is not barred by the two-year statute of limitations, N.J.S.A. 2A:14-2. Accordingly, the order of the Law Division denying Takata's motion for summary judgment is affirmed.