781 A.2d 52 (2001)
344 N.J. Super. 160
Elizabeth BERNOSKIE, Administratrix ad Prosequendum as General Administratrix of the Estate of Charles Bernoskie, Deceased, Plaintiff-Respondent,
v.
Robert ZARINSKY, Defendant-Appellant, Theodore Schiffer, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 2001.
Decided June 14, 2001.
*53 Henry F. Furst, West Orange, argued the cause for appellant.
Kenneth S. Javerbaum, Springfield, argued the cause for respondent (Javerbaum, Wurgaft, Hicks & Zarin, attorneys; Mr. Javerbaum, on the brief)
Before Judges SKILLMAN, WECKER, and LESEMANN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether an alleged murderer who avoided detection and apprehension for more than forty years may be precluded by the doctrine of equitable tolling from invoking the applicable statutes of limitations to bar a wrongful death and survivorship action brought by the victim's estate.
*54 On the evening of November 28, 1958, Officer Charles Bernoskie of the Rahway Police Department attempted to apprehend two persons who were in the process of committing a burglary in a car dealership. A gun battle ensued in which Officer Bernoskie was shot three times, resulting in his death a short time later. Officer Bernoskie was survived by his wife and six children.
For the next forty years, the law enforcement officials who investigated the murder were unable to identify any suspects. However, in the summer of 1999, as a result of information provided by defendant's sister, the police identified defendant, who was already serving a life sentence for another murder, and his cousin, Theodore Schiffer, as suspects in the crime.
After indictments were returned against both men, Officer Bernoskie's widow, plaintiff Elizabeth Bernoskie, Administratrix ad Prosequendum and General Administratrix of his estate, brought this wrongful death and survivorship action against defendant and Schiffer. Before filing an answer, defendant filed a motion to dismiss the complaint on the ground that it is barred by the applicable statutes of limitations.[1]
In her affidavit filed in opposition to the motion, plaintiff stated that after the murder, law enforcement officials told her that their investigation had "yielded no definite suspects," and thereafter, she periodically made inquiries to the Rahway Police Department concerning the status of their investigation, but was told "there was no news to report regarding the solution of this crime." It was not until late July 1999, upon a visit to the Rahway Police Department, that plaintiff "was advised that, after four decades, new evidence was finally discovered which might lead to the apprehension of the responsible parties."
The trial court denied defendant's motion to dismiss. In a comprehensive oral opinion, Judge Beglin concluded that equitable considerations precluded defendant from invoking statutes of limitations to bar plaintiff from pursuing a wrongful death and survivorship action for the murder, at least pending the disposition of the pending criminal charges:
[Statutes of limitations] represent the legislative policy of this state, that after the expiration of whatever set period of time the statute provides, a plaintiff is unable to pursue a cause of action and a defendant is entitled to the repose that such a statute provides to the defendant.
Courts must be respectful of such legislative policy. But courts, also, over the years ... have been able to address unique problems in an equitable fashion....
....
As I look at these circumstances, one,... it involves the crime of homicide. In other words, in the strata of the criminal code, the highest crime there is, the taking of another's life. It is, by its definition, an act of purpose, of deliberateness and intent and that separates it from most of the other cases which involve acts of negligence but not deliberateness.
The victim was a police officer. Law enforcement from practically the moment of the event had been involved in its investigation, and law enforcement for 40 or more years was unable to identify anyone against whom a criminal complaint could be lodged.... That period *55 of intervening years was something over which Mrs. Bernoskie had no control. It would be fundamentally unfair to require of a plaintiff such as this more than what law enforcement was able to achieve.
We may ask what in the world would the Bernoskie family have done to learn the identity of the alleged perpetrator beyond that which law enforcement was doing and was unable to reach any positive result? That distinguishes [this] case from many, many others where you may fairly and reasonably attribute things to a plaintiff and require that a plaintiff do....
Judge Beglin also noted that there were countervailing considerations of possible unfairness to defendant in being required to defend an action based on events that occurred more than forty years ago. Consequently, he preserved defendant's right to renew his motion to dismiss based on a full evidentiary record:
The defendant is entitled to develop, in a full factual fashion, the unfairness argument that he can only present today in a most general fashion....[T]herefore before trial, if requested, [defendant] is entitled to a hearing for the court to revisit and determine ... whether he has presented sufficient facts and circumstances to demonstrate that equitably the statute of limitations should be imposed.
Judge Beglin also recognized that as long as the criminal charges against defendant were pending, defendant would not be in a position to present all available evidence of any alleged unfairness in allowing this action to proceed. Accordingly, Judge Beglin directed that any hearing concerning the equities of allowing this case to proceed should not be held until the criminal proceeding had concluded.
We granted defendant's motion for leave to appeal the order denying his motion to dismiss. During the pendency of the appeal, a jury acquitted defendant of the criminal charges. We now affirm the order denying defendant's motion to dismiss, and remand the case to the trial court.
Plaintiff's survivorship claim for the pain and suffering experienced by her husband during the short time between the shooting and his death is governed by N.J.S.A. 2A:14-2, which provides that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued." Plaintiff's wrongful death claim is governed by N.J.S.A. 2A:31-3, which provided at the time of the murder that a wrongful death action "shall be commenced within 2 years after the death of the decedent, and not thereafter."
To ameliorate the sometimes harsh and unjust impact of these limitations provisions, our Supreme Court has adopted equitable doctrines that may be invoked by an injured party to extend the time for filing a claim beyond what would be allowed under a rigid application of the statutes of limitations. See, e.g., LaFage v. Jani, 166 N.J. 412, 420-31, 766 A.2d 1066 (2001) (equitable tolling); Negron v. Llarena, 156 N.J. 296, 304-05, 716 A.2d 1158 (1998) (substantial compliance); Lopez v. Swyer, 62 N.J. 267, 273-76, 300 A.2d 563 (1973) (discovery rule). These doctrines recognize that "[u]nswerving `mechanistic' application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing [the] legislative purposes" of providing repose for potential defendants and sparing the courts from the burden of hearing stale claims. Galligan v. Westfield Centre Service, Inc., 82 N.J. *56 188, 192, 412 A.2d 122 (1980). Our Supreme Court has applied these doctrines not only to what are commonly called "procedural" statutes of limitations, which bar only a remedy but not the right that existed at common law, but also to "substantive" statutes of limitations, which establish a condition precedent to filing a claim that did not exist at common law. See, e.g., LaFage, supra, 166 N.J. at 420-31, 766 A.2d 1066; Negron, supra, 156 N.J. at 300-04, 716 A.2d 1158; White v. Violent Crimes Compensation Bd., 76 N.J. 368, 374-78, 388 A.2d 206 (1978).
The discovery rule and substantial compliance doctrine do not apply to this case. The discovery rule may be invoked only "when injured parties reasonably are unaware that they have been injured or, although aware of an injury, do not know that the injury is attributable to the fault of another." Baird v. American Med. Optics, 155 N.J. 54, 66, 713 A.2d 1019 (1998). Plaintiff was aware on the day of the crime that her husband had been murdered. Although she did not know the identity of the perpetrators, the discovery rule ordinarily does not delay the accrual of a cause of action when a plaintiff is aware of the injury and of facts sufficient to attribute the injury to the fault of another, but cannot determine the tortfeasor's identity. Viviano v. CBS, Inc., 101 N.J. 538, 546-47, 503 A.2d 296 (1986); Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 274, 693 A.2d 1248 (App.Div.1997), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998). But see O'Keeffe v. Snyder, 83 N.J. 478, 493, 416 A.2d 862 (1980) (finding that in a replevin action, the discovery rule precluded running of limitations period until plaintiff knew or should have known of the cause of action, "including the identity of the possessor of the paintings") (emphasis added). Moreover, the discovery rule would not preserve plaintiff's wrongful death claim in any event, because the rule applies only "to an accrual period of limitations," not to a limitations provision "based upon a fixed objective event," such as "death," which is the triggering event for the Wrongful Death Act limitations provision, N.J.S.A. 2A:31-3. Presslaff v. Robins, 168 N.J.Super. 543, 546, 403 A.2d 939 (App.Div.1979); see also Miller v. Estate of Sperling, 166 N.J. 370, 375-86, 766 A.2d 738 (2001); Hernandez v. St. James Hosp., 214 N.J.Super. 538, 542, 520 A.2d 773 (App.Div.1986). The substantial compliance doctrine is also inapplicable to this case because plaintiff failed to take any action within the limitations periods. Compare Negron, supra, 156 N.J. at 305-07, 716 A.2d 1158 (holding that plaintiff substantially complied with two year limitations period for filing wrongful death action by filing an action in federal district court within that time).
However, the trial court correctly concluded that this may be an appropriate case for equitable tolling. Plaintiff was prevented from filing this action within the applicable two year limitations periods solely because her husband's alleged murderers escaped detection and apprehension for more than forty years.[2] Plaintiff herself *57 was not in a position to identify the perpetrators of a crime that law enforcement officials were unable to solve despite intensive efforts, and a murderer who escapes detection and apprehension has no equitable claim to the repose from the threat of litigation that statutes of limitations are designed to provide. In fact, our Criminal Code provides that a prosecution for murder "may be commenced at any time[,]" N.J.S.A. 2C:1-6a,[3] and plaintiff brought this action only a short time after defendant was indicted for the murder. This prosecution could have resulted in defendant's imprisonment for life, N.J.S.A. 2A:113-4,[4] and if the crime had been committed after July 1983, it could have resulted in imposition of the death penalty. L. 1983, c. 245 (N.J.S.A. 2C:49-1 to -12). An alleged murderer who remains subject to these severe criminal penalties has no just claim to immunity from a suit for money damages brought by the victim's family.
Moreover, we have previously recognized the appropriateness of applying the doctrine of equitable tolling to extend the time for filing a civil action against the alleged perpetrator of a crime who avoids apprehension and consequently cannot be identified by the victim during the limitations period. In Dunn v. Borough of Mountainside, supra, 301 N.J.Super. 262, 693 A.2d 1248, the plaintiff was sexually assaulted by a police officer who stopped her for a traffic violation. Plaintiff did not bring suit until the officer was identified three years later, after the applicable two year limitations period had expired. In concluding that this limitations period should be equitably tolled, we noted that "[a] determination on the equities of applying a statute of limitations is `within the province of the court,'" id. at 279, 693 A.2d 1248 (quoting Lopez, supra, 62 N.J. at 274, 300 A.2d 563), and concluded that the equities favored the victim of the crime rather than the perpetrator:
Statutes of limitation are primarily a shield to protect a defendant from having to defend stale claims. They should not be used as a sword by a defendant whose conduct contributed to the expiration of the statutory period.
[Id. at 280, 693 A.2d 1248.]
Although Dunn emphasized the fact that the defendant, as a police officer, had an official duty to report the crime he had committed, and had concealed his identity by violating that duty, id. at 276-81, 693 A.2d 1248, we do not believe that the equitable principles upon which the opinion rests should be limited to those circumstances.
This conclusion is supported by decisions in other jurisdictions which have held that equitable tolling or other equitable principles may postpone the running of the limitations period applicable to a crime victim's claim against a perpetrator who the police are unable to identify until after the limitations period has expired. See, e.g., Allred v. Chynoweth, 990 F.2d 527, 530-32 (10th Cir.1993); Smith v. City of *58 Chicago Heights, 951 F.2d 834, 839-42 (7th Cir.1992); Williams v. Hartje, 827 F.2d 1203, 1205-06 (8th Cir.1987); see also Royal Indem. Co. v. Petrozzino, 598 F.2d 816, 821 (3d Cir.1979).
Finally, we note that after this action was filed, the Legislature amended N.J.S.A. 2A:31-3, which now provides:
Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter, provided, however, that if the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent, the action may be brought at any time.
This act shall take effect immediately and shall apply to any action filed on or after the effective date including actions filed where the murder, aggravated manslaughter or manslaughter occurred prior to the effective date of this act.
[L. 2000, c. 157 (emphasis added).]
The amendment to N.J.S.A. 2A:31-3 does not apply to this action, because plaintiff's complaint was filed before its effective date. In any event, plaintiff could not now take advantage of the amended version of N.J.S.A. 2A:31-3 because the exception it creates from the normal two year limitations period for filing a wrongful death action only applies to a defendant who has been convicted of murder, aggravated manslaughter or manslaughter, and defendant has been acquitted of the criminal charge against him.
Accordingly, the denial of defendant's motion to dismiss is affirmed and the case is remanded to the trial court.
NOTES
[1] Although the complaint was served upon Schiffer, he has not answered or filed a motion to dismiss.
[2] Defendant argues in a reply brief that plaintiff could have brought suit within two years of her husband's death, using fictitious "John Doe" names to identify the defendants, as provided in Rule 4:26-4. This argument is not properly before us, because it was not presented in defendant's initial brief. Township of Warren v. Suffness, 225 N.J.Super. 399, 412, 542 A.2d 931 (App.Div.1988). In any event, the argument is without merit, because Rule 4:26-4 was not adopted until 1969, see Pressler, Current N.J. Court Rules, comment on R. 4:26-4 (2001), and even if some version of the fictitious party practice predated adoption of the rule, this practice is only appropriate when "circumstances exist in which the identity of the unknown defendant is reasonably capable of discovery." Knauf v. Elias, 327 N.J.Super. 119, 128, 742 A.2d 980 (App.Div.1999). Because the police could not identify the alleged perpetrators of the Bernoskie murder for more than forty years, it would have been impractical to bring an action under Rule 4:26-4 in the circumstances of this case.
[3] The former criminal code in effect at the time of Bernoskie's murder also allowed an indictment for murder to be returned at any time. N.J.S.A. 2A:159-2; see State v. Zarinsky, 75 N.J. 101, 380 A.2d 685 (1977).
[4] The Code of Criminal Justice repealed this sentencing provision,L. 1978, c. 95 (N.J.S.A. 2C:98-2), but it still governs any murder committed before the effective date of the Code. See N.J.S.A. 1:1-15.